BROTHERHOOD RAILWAY CARMEN DIVISION, TRANSPORTATION COMMUNICATIONS INTERNATIONAL UNION, AFL–CIO, Plaintiff–Appellee,

v.

ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Defendant–Appellant.

Nos. 90–3800, 91–1446.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1991.

Decided Feb. 6, 1992.

Solomon I. Hirsh, Chicago, Ill., John A. Edmond (argued), Richard Ruda, Maria Makris–Gouvas, Guerrieri, Edmond & James, Washington, D.C., for plaintiff-appellee.

J. Stephen Poor, David J. Rowland (argued), Seyfarth, Shaw, Fairweather & Geraldson, Joel W. Rice, Fox & Grove, John J. Fleps, Chicago, Ill., Guy Vitello, Atchison, Topeka & Santa Fe Ry. Co., Schaumburg, Ill., for defendant-appellant.

Before CUDAHY, POSNER and COFFEY, Circuit Judges.

POSNER, Circuit Judge.

An arbitral board established under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*, issued an award that the union interpreted as requiring the railroad to give a discharged worker $77,000 in severance pay. The railroad refused to pay this amount and the union sued in federal district court, which ordered the railroad to pay the full amount sought by the union, brushing aside the railroad's argument that in doing so the court was invading the arbitrators' domain by resolving interpretive questions under the collective bargaining agreement.

The railroad's appeal presents a difficult question but one inherent in the structure of judicially enforceable arbitration. Whether in ordinary commercial arbitration, labor arbitration, or railroad labor arbitration, the arbitrator of a contract dispute has exclusive jurisdiction to interpret the contract, but at the same time the winner of the arbitration is entitled to judicial assistance in enforcing the arbitrator's award. Federal Arbitration Code, 9 U.S.C. § 9; Taft–Hartley Act, § 301, 29 U.S.C. § 185; Railway Labor Act, 45 U.S.C. §§ 153 First (p), (q); *Chicago Typographical Union v. Chicago Sun–Times, Inc.,* 935 F.2d 1501, 1503–05 (7th Cir.1991); *Chicago & North Western Transportation Co. v. Railway Labor Executives' Ass'n,* 908 F.2d 144, 158 (7th Cir.1990). We say "but" rather than "and" to underscore the tension within the dual principle: the loser of the arbitration could try to frustrate the winner's entitlement to judicial assistance by arguing to the court that there was a contractual ground for not paying the award—an argument intended to touch off a new contractual dispute that must be arbitrated before the award can be enforced judicially. An infinite regress looms. That is what the union says the railroad is trying to bring about in this case.

A worker's job was abolished in 1986 but the railroad and the union disagreed over whether it was abolished for a reason that entitled the worker to severance pay. The union filed a grievance. The collective bargaining agreement requires that the parties first try to resolve a grievance "on the property," that is, by informal negotiation. In fact the Act itself requires this. 45 U.S.C. § 153 First (i); *Elmore v. Chicago & Illinois Midland Ry.,* 782 F.2d 94, 96 (7th Cir.1986). If informal negotiation fails, the matter is referred to an arbitral board. That is what happened. The railroad filed its notice of intent to arbitrate in November 1986. The parties filed written submissions with the board in January and February of 1987. The case was argued on

October 8, 1987, and the board issued its award on October 25. It agreed with the union that the worker had been terminated for a reason that entitled him to benefits. Its award, however, does not specify an amount to be paid, but merely says: "Claim sustained.... Claimant shall be provided with the employee protection contained in Article I of the September 25, 1964 Agreement." That article specifies the severance pay due workers who lose their jobs for reasons that include the one the arbitral board found cost this worker his job.

Given this worker's seniority, Article I entitled him to sixty months of severance pay—provided he did not, before the end of the severance period, refuse another job with the railroad; for the collective bargaining agreement provides that if and when a worker declines another job with the railroad he loses his entitlement to severance pay. Now it happens that back in January 1987, after the negotiations "on the property" had ended but well before the hearing before the arbitrators, the railroad had (it claims) offered this worker another job, which he had declined. The railroad did not attempt to bring this incident to the attention of the arbitrators, but instead, after the arbitrators rendered their award, decided that as the worker had been let go nine and a half months before he refused the offer of a new job, he was owed only nine and a half months of severance pay under the award. This interpretation of the award and consequent refusal to pay the full sixty months of severance pay precipitated the union's suit for $77,000—the full sixty months' worth.

The district judge ruled that by failing to bring the worker's refusal of the job offer to the attention of the arbitral board—which had heard oral argument nine months after the job had allegedly been offered and declined—the railroad had waived its right to oppose the full award on the basis of that refusal. The judge rejected the railroad's argument that the collective bargaining agreement had forbidden it to bring the matter to the arbitrators' attention. The agreement provides that "each written submission shall be limited to the material submitted by the parties to the dispute on the property." The railroad had not submitted any material concerning the worker's refusal of the job offer during the negotiations on the property—for the very good reason that those negotiations had ended several months before the job offer was made and refused. (So the sequence was: initial grievance procedure; job offer and refusal; arbitration hearing.) Therefore, the railroad argued, it had been barred by the collective bargaining agreement from presenting the matter to the arbitrators. To this the district judge replied that "private parties may not contract to frustrate federal arbitration law." She cited no provision of federal arbitration law in support of this conclusion, but perhaps all she meant was that the railroad's tactics if condoned would inject delay into the arbitration process, and arbitration is a favored remedy, especially in labor cases—and above all in railroad labor cases, where it is, indeed, the federally mandated remedy for the class of disputes exemplified by this case.

■ No law, however, prevents the parties to a collective bargaining agreement in the railroad industry (or elsewhere, so far as we know) from establishing a procedure which confines an arbitrator to issues framed and evidence submitted at the earlier stages of dispute resolution established by the contract empowering arbitral resolution of disputes. On the contrary, not only is it customary for collective bargaining agreements to require the exhaustion of the preliminary stages of the grievance procedure before resorting to arbitration or (if there is no arbitration clause) litigation, *United Industrial Workers v. Kroger Co.,* 900 F.2d 944, 947 (6th Cir.1990); *Williams v. Chicago & North Western Transportation Co.,* 715 F.Supp. 857, 860 (N.D.Ill. 1989); Frank Elkouri & Edna Asper Elkouri, *How Arbitration Works* 153, 160, 198, 204–05 (4th ed. 1985)—for why establish remedies if the parties are free to bypass them?—but a duty to exhaust might well be thought implicit in the statutory duty noted earlier to establish an initial stage of "on the property" grievance

procedure in railroad labor cases. The requirement of exhaustion implies, in turn, that a party may not raise an issue, or present new evidence concerning an old issue, for the first time at the arbitration stage, for by doing so he would bypass the earlier stages and thus fail to exhaust the remedies provided at those stages.

■ It is true that labor arbitrators will at times entertain issues, or receive evidence, newly presented to them without insisting (as would be required in a federal habeas corpus proceeding, for example, or other areas of law where exhaustion of remedies is also required) that exhaustion be shown to have been infeasible in the circumstances. Elkouri & Elkouri, *supra,* at 234, 302. But this liberality is *not* characteristic of arbitrators under the Railway Labor Act, *id.* at 304—indeed, it can be argued that the introduction of new evidence at the arbitral stage is prohibited to them. See *id.* at 304 n. 51 and 29 C.F.R. § 301.7(b). This is not entirely clear but in any event no one could suppose that a party has a *duty* to introduce (or rather, try to introduce) evidence at that stage, as the district judge appears to have believed. So the railroad cannot be accused, as in *Chicago Newspaper Guild v. Field Enterprises, Inc.,* 747 F.2d 1153, 1157–58 (7th Cir.1984), of having bypassed arbitration by withholding its evidence of a job offer and refusal from the arbitrators and mentioning it for the first time in court. It was mentioned in the district court only to show that the arbitrators' award did not mean what the union said the award meant: pay $77,000.

■ While disagreeing with the district judge, we are not certain that the exhaustion procedure is *so* rigid as to require in every case bifurcating the dispute resolution process into two phases, the first to decide whether any severance benefits were owed and the second to decide how much, with each phase to march lockstep through the entire dispute resolution process from the filing of a grievance to eventual decision by an arbitral board. A possible alternative was for the railroad back in January 1987, when it offered the worker a new job and he refused it, to inform the union of this development and suggest that both parties join in asking the arbitral board to defer consideration of the grievance until a second grievance could be filed and processed on the property concerning the significance of the offer and refusal: Was it the sort of offer the collective bargaining agreement required the worker to accept on pain of losing the remainder of his severance benefits? Was it made in good faith? Did he really refuse it? The two cases could then be consolidated for decision by the same arbitral board. We find nothing in the Railway Labor Act or in the collective bargaining agreement that would preclude such a commonsensical method of proceeding. On the other hand, the bifurcation of liability and remedy is common in judicial proceedings (and certainly not unknown in labor arbitration, as illustrated by *American Totalisator Co.,* 74 Lab. Arb. Rep. 377, 388 (1980)), and if the railroad had won the first grievance the second would have been moot.

■ So the railroad may not have been required to proceed as woodenly as it did, but it doesn't follow that it was *forbidden* to proceed as it did. And the question whether it was acting in conformity with the collective bargaining contract in proceeding as it did before the arbitrators is itself a matter of contractual interpretation. It is for them to decide whether by withholding evidence of the job offer and refusal the railroad waived any objection to paying the full sixty months of severance pay. Not federal arbitration law, but the collective bargaining contract, establishes the procedures to be followed before the arbitrators. The interpretation of those procedures is therefore a matter for the arbitrators to decide. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964). Federal arbitration law concerns not the making of arbitration awards but their judicial enforcement.

■ All this would have been clearer had the union sued merely to enforce the award—rather than to collect $77,000. For the award doesn't specify an amount. All

it does is uphold a claim that a worker entitled by virtue of seniority to sixty months of severance pay (unless ...) was in fact terminated for a reason triggering that entitlement. Left open is the question what if any offset the railroad can make against these severance benefits by reason of offering the worker another job, which he did not accept. The award does not address this question because it was never brought to the arbitrators' attention. The award is not stated in dollar terms because the dollar amount is contingent; so what the union was seeking was not enforcement of the award *tout court*, but enforcement of its interpretation of the award, under which the company's offset was extinguished.

To repeat: the severance-pay entitlement in the collective bargaining agreement is not to a sum certain, but to installment benefits unless and until a terminating contingency intervenes, such as a new job with the railroad, or death—for the collective bargaining agreement also provides that the worker's death terminates his entitlement to severance pay. So contingent and interruptable a stream of future benefits does not—even if the necessity of discounting future sums to present value in order to reflect the time value of money is ignored, as it should not be—equate to a sum certain equal to the sum of the future benefits. An interpretation of the arbitrators' award that supposes it to make such an equation (in silence) is odd enough; it looks like an effort by the union to extinguish the railroad's right to end severance benefits upon the occurrence of a terminating event. But whether the union's interpretation is right or wrong, in accepting it the district judge implicitly interpreted the agreement, which she lacked the statutory authority to do. Paradox though this may seem, the judicial duty to enforce an arbitration award, on which see *Chicago Newspaper Guild v. Field Enterprises, Inc.*, *supra*, 747 F.2d at 1156, is neither a duty nor a license to interpret it.

The railroad argues that since it disagrees with the union's reading of the collective bargaining agreement as entitling it to the full $77,000 regardless, we should simply vacate the district judge's decision enforcing the award and leave the parties to their contractual remedies. The union would have to file a grievance complaining about the railroad's failure to comply with the award, the grievance would have to be processed on the property for the contractually specified period, and then if still unresolved the grievance would have to be submitted once again to arbitration, perhaps followed by another proceeding in the district court, followed by an appeal to us. Yet this worker was let go six years ago. Employment disputes are supposed to be resolved expeditiously, with minimum judicial involvement. *Union Pacific R.R. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).

The error in the railroad's preferred disposition of this case (its back-up request is for a remand to the arbitrators) is that in arguing that the case must begin again "on the property," it is asking us implicitly to interpret the procedural provisions of the collective bargaining agreement. It is asking us to rule that its own view of the proper procedures in a case such as this—a view grounded in an interpretation of the collective bargaining agreement, and only tenuously if at all in the statute—is the correct view. Yet for all we know, the union is right in arguing that the railroad's failure to disclose the job offer and refusal until after it lost the arbitration forfeits the railroad's attempt to invoke the provision of the collective bargaining agreement that allows it to cut off benefits in such a case. The union just is making the argument to the wrong body—a court.

But is it clear that the right body is the committee of union and company representatives that constitutes the first stage of the dispute resolution process created by the collective bargaining agreement—the "on the property" stage? Or is it the arbitral board to which, the union argues, the company should have disclosed the job offer and refusal? (Maybe not in a written submission—but what about at the oral hearing?) Who knows? The easiest way to elicit an answer is to remand the case to the arbitral board, as we are empowered to

do. *Ethyl Corp. v. United Steelworkers,* 768 F.2d 180, 187–88 (7th Cir.1985). The board can decide whether the union must file a new grievance, whether the company must pay the full $77,000 on some theory of waiver, whether a waiver argument must be addressed in the first instance in the grievance proceeding "on the property," or whether the company is liable only for nine and a half months of severance pay, period. We express no opinion on these questions. They are not for us to decide. They are for the arbitrators whom the collective bargaining agreement and the Railway Labor Act authorize to make binding interpretations of the agreement.

The judgment of the district court is reversed with directions to remand the case to the Special Board of Adjustment.

REVERSED AND REMANDED, WITH DIRECTIONS.