Eric GREENE, Plaintiff,

v.

UNITED PARCEL SERVICE, Defendant.

No. 93 CV 6105.

United States District Court,
N.D. Illinois,
Eastern Division.

May 5, 1994.

John F. O'Meara, Law Office of John F. O'Meara, Park Ridge, IL, for Eric Greene.

John A. McDonald, John Allen Klages, Lisa E. Grampo, Keck, Mahin & Cate, Chicago, IL, for United Parcel Service.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Eric Greene, an African American, filed this action against defendant United Parcel Service, Inc. (UPS) alleging that he was discriminated against because of his race. Greene maintains that UPS fired him in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. UPS contends, however, that Greene was terminated because of poor work performance. Before this court is UPS' motion to dismiss Greene's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Federal subject matter jurisdiction is based on 28 U.S.C. § 1331. For the reasons stated below, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

Greene began working for UPS on July 27, 1977, as a package car unloader. On May 5, 1986, he was promoted to full-time package car driver. UPS required its package car drivers to finish their deliveries by 7:30 p.m. Drivers are to call in to UPS by 4:00 p.m. if they anticipate missing the 7:30 p.m. deadline. On June 27, 1989, Greene discovered that he could not finish his deliveries by 7:30 p.m. He called to inform UPS of this fact at 6:00 p.m. His supervisor instructed him to continue working and to go off the clock at 8:00 p.m. The following day, UPS terminated Greene's employment.

Greene had been terminated on three other occasions prior to the June 28, 1989 discharge—in February 1989, March 1989, and earlier in June 1989. On each of these occasions the reason given for the dismissal was a failure to meet an established deadline. Greene filed a charge of discrimination with the Illinois Department of Human Rights on August 1, 1989. This charge was cross-filed with the district office of the Equal Employment Opportunity Commission (EEOC). In his charge, Greene contended that white drivers also failed to meet these deadlines but that no disciplinary action was taken against them.

Greene filed a complaint before the Illinois Human Rights Commission (IHRC) on May 8, 1992. UPS moved for summary judgment on May 3, 1993, contending that it fired Green because of his long-standing poor job performance and not because of his race. Greene did not respond to this motion, and the administrative law judge (ALJ) found in favor of UPS. Based on the material submitted by UPS, the ALJ concluded that Greene was discharged because of his poor job performance, not his race. The ALJ recommended that the matter be dismissed with prejudice. The IHRC panel reviewed the recommended order and decision submitted by the ALJ. On November 22, 1993, the panel affirmed and adopted the ALJ's recommended order and decision, and dismissed Greene's complaint with prejudice.

The EEOC issued a "Notice of Right to Sue" letter to Greene on July 9, 1993. Greene filed this lawsuit on October 7, 1993, alleging violations of Title VII and Section 1981. UPS has moved to dismiss on the grounds that the court lacks jurisdiction and that Greene has failed to state a claim upon which relief can be granted.

## DISCUSSION

### I. *Greene's Title VII Claims*

■ UPS moves to dismiss Greene's Title VII claims pursuant to Rule 12(b)(1), maintaining that this court lacks subject matter jurisdiction. UPS alleges that it is a "carrier" under the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.*, and that this claim is therefore subject to the compulsory, binding arbitration which is required for all work-related disputes between unionized employ-

ees and employers subject to the RLA.[1] The RLA provides, in relevant part, that

> [t]he disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions ... shall be handled in the usual manner up to and including the chief operating officer of the carrier designed to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board, as hereinafter provided, with a full statement of the facts and supporting data bearing upon the disputes.

45 U.S.C. § 184. The Supreme Court has found that this arbitration procedure is mandatory and the exclusive method for resolving grievance disputes arising under the RLA. *Brotherhood of Locomotive Eng'rs v. Louisville & N. R.R.*, 373 U.S. 33, 38, 83 S.Ct. 1059, 1062, 10 L.Ed.2d 172 (1963). However, to expedite the resolution of on-the-job grievances the RLA allows a carrier and a class of employees (in this case, a union) to establish their own system for resolving disputes. *See* 45 U.S.C. § 153 Second. Such a system shall have a board comprised of both carrier and employee representatives. *Id.* A fundamental element of such a board is the selection of a "neutral person" to consider and dispose of matters upon which the persons designated by the carrier and the employees cannot reach agreement. *Id.*

All terms and conditions of Greene's employment with UPS were governed by a collective bargaining agreement (the agreement) between UPS and Teamsters' Local 705 (the union). Article 22 of this agreement provides, in relevant part, that

> [d]ifferences between the Employer and the Union as to the application or interpretation of any of the provisions of this Agreement, including the question of whether an Employee has been disciplined or discharged for just cause, shall be settled by the following grievance and arbitration procedure; if such differences are not settled by the Employer and the Union within three (3) working days, then the Employer and the Union shall each appoint two (2) members to constitute a Grievance Committee. If the Committee of four (4) cannot reach a settlement within five (5) working days thereafter ... then a fifth person who shall be designated chairman shall be appointed by the four....

UPS' motion to dismiss resembles a carefully balanced house of cards as each painstakingly arranged argument relies on the next for support and each argument is necessary to lead the reader to the following level. At the heart of this motion is the premise that because the agreement contains a broad non-discrimination clause, Greene's Title VII claims require the application or interpretation of the agreement. Next comes the theory (which the court has accepted for the purposes of resolving this motion) that UPS is a "carrier" subject to the RLA. Under the RLA, the exclusive remedy for disputes involving an application or interpretation of the agreement is the arbitration procedure agreed to by the union and UPS. Therefore, this theory concludes, this court lacks jurisdiction over Greene's Title VII claims.

However, like a house of cards, if one of these arguments falls, they all fall. In this case the court simply cannot accept the contention that Greene's statutory claims under Title VII require an interpretation of the agreement. Article 30 of the agreement provides that

> [t]he Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, age, or national origin, nor will they limit, seg-

---

1. The court notes that there has been no judicial determination that UPS is subject to the RLA. While UPS maintains that the RLA is applicable because of its recent emergence as an air carrier, the collective bargaining agreement in effect at the time of Greene's termination provides that the National Labor Relations Act (NLRA) is applicable. However, the court need not decide this issue today. For the purposes of this motion we will assume that the UPS is subject to the RLA.

regate or classify Employees in any way to deprive any individual Employee of employment opportunities because of race, color, religion, sex, age, or national origin. It is true that this language is very broad. However, this does not mean that all UPS employee discrimination claims will involve an interpretation of the agreement. Rather, we think that Article 30 provides a contractual discrimination remedy which is distinct from the employee's statutory remedies.

In *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 49–50, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147 (1974), the Supreme Court held that an employee whose grievance had been arbitrated pursuant to a collective bargaining agreement was not precluded from bringing a Title VII action based upon the conduct that was the subject of the grievance. In so holding the Court emphasized that an employee's contractual rights under a collective bargaining agreement are distinct from the employee's statutory Title VII rights. *Id.* The Court stated that "[t]he distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence." *Id.* at 50, 94 S.Ct. at 1020. The Court stressed that Title VII was designed to supplement, not supplant, existing remedies for discrimination, and that the legislative history manifests a congressional intent to allow an individual to pursue his rights under Title VII, as well as other applicable state and federal statutes. *Id.* at 47–48, 94 S.Ct. at 1019. Accordingly, the Court held that a prior arbitral decision does not foreclose an individual's right to sue, nor does it divest a federal court of jurisdiction. *Id.*

This court finds *Gardner–Denver* instructive of the issues before it. The mere fact that the agreement contains a non-discrimination clause does not mean that it must be interpreted to resolve all employee discrimination claims. In this lawsuit Greene seeks to vindicate statutory, not contractual, rights.

UPS relies heavily upon *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), to support its position. The Supreme Court there held that claims arising under the Age Discrimi-

nation in Employment Act (ADEA) could be subject to compulsory arbitration, enforceable pursuant to the Federal Arbitration Act. *Id.* at 26, 111 S.Ct. at 1652. Gilmer was required by his employer, Interstate/Johnson Lane Corp, to register as a securities representative with the New York Stock Exchange (NYSE). *Id.* at 23, 111 S.Ct. at 1650. His registration application contained an agreement to arbitrate when required by NYSE rules. *Id.* NYSE Rule 347 provides for arbitration of any controversy arising out of a registered representative's employment or termination of employment. *Id.* at 22–24, 111 S.Ct. at 1650–51. When Gilmer was terminated at age 62, he brought suit under the ADEA alleging that he was a victim of age discrimination. *Id.* His employer moved to compel arbitration. *Id.* The Court concluded that Gilmer was bound by his agreement to arbitrate. *Id.*

In so holding, however, the Court reaffirmed *Gardner–Denver* and its progeny, and carefully distinguished those cases from *Gilmer*. The *Gardner–Denver* line of cases involved the issue of whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims, while *Gilmer* involved the enforceability of an agreement to arbitrate statutory claims. *Gilmer*, 500 U.S. at 35, 111 S.Ct. at 1657. The Court noted that the arbitration in each of the *Gardner–Denver* line of cases was compelled by a collective bargaining agreement and that in such a situation there was inherent tension between collective representation and individual statutory rights. By contrast, Gilmer *himself* agreed to arbitrate his statutory claims. The *Gilmer* Court therefore did not have to be concerned about the potential disparity in interests between a union and an employee.

This court is compelled to follow the holding of *Gardner–Denver*. UPS relies on several decisions from other jurisdictions to suggest that recent caselaw dictates a contrary result, but none of these cases is controlling. The Seventh Circuit, on the other hand, has recently held that an arbitral decision under the RLA upholding the discharge of a railroad employee does not have preclusive effect on the employee's claims under the Fed-

eral Employers' Liability Act (FELA). *Kulavic v. Chicago & Illinois Midland Ry.*, 1 F.3d 507, 520 (7th Cir.1993). In that opinion the court relied heavily on *Gardner–Denver* and on two occasions noted that arbitration would not bar a subsequent Title VII action. *See Kulavic*, 1 F.3d at 514 and 517. Moreover, the court agreed with the *Gardner–Denver* Court that Congress intended some statutes to be judicially enforceable and that arbitration cannot always provide an adequate substitute for judicial proceedings. *Id.* at 514. After taking a close look at the arbitration proceedings in Kulavic's case, the court found that the factfinding process was inferior to judicial factfinding and that the arbitration board's review could not adequately protect the statutory rights set forth in FELA. *Id.* at 517. Thus, the court remanded for a determination as to the employee's rights under FELA, in spite of the fact that the RLA was applicable.

In light of this circuit's continuing adherence to the holding of *Gardner–Denver*, this court concludes that it has jurisdiction over this matter (even assuming that UPS is a "carrier" under the RLA).[2] Greene's Title VII claims do not require reference to or interpretation of the collective bargaining agreement, they are independent statutory rights accorded by Congress. UPS' motion to dismiss the Title VII claims for lack of subject matter jurisdiction is denied.

## II. *Greene's § 1981 Claims*

■ UPS moves to dismiss Greene's § 1981 claims on several grounds. This court will not engage in a protracted discussion of these arguments, however, because the § 1981 claims are subject to *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). *Patterson* held that racial discrimination relating to the conditions of continuing employment is not actionable under § 1981, which covers only the right of a non-white "to make and enforce contracts" on the same basis as whites. *Id.* at 176, 109 S.Ct. at 2372. The Court stated that

[t]he right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory work conditions.

*Id.* at 177, 109 S.Ct. at 2372. The Court noted that remedies for post-formation conduct, such as failure to promote or wrongful discharge, lie with state contract law and Title VII. *Id.* Accordingly, under *Patterson*, § 1981 provides no relief for a discriminatory discharge claim.

■ Greene argues that this case is governed by the amended version of § 1981, which was included in the Civil Rights Act of 1991 (the 1991 Act or the Act). In § 101 of the Act, Congress amended § 1981 to provide that the term "make and enforce contracts" includes the termination of contracts. Greene maintains that he should get the benefit of this amendment and be allowed to pursue a § 1981 remedy for his alleged discriminatory discharge. However, the Supreme Court very recently ruled that § 101 does not apply to pre-enactment conduct. *See Rivers v. Roadway Express, Inc.*, —— U.S. ——, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994). The Court there held that § 101 does not affect *Patterson's* applicability to cases arising before the 1991 Act's passage. Accordingly, since Greene was terminated on June 28, 1989, two years before the Act was enacted, his § 1981 claims are subject to *Patterson*. The § 1981 claims are therefore dismissed.

### CONCLUSION

The motion to dismiss is denied as to the Title VII claims and granted with respect to the § 1981 claims.

---

**2.** *See also Tarrant v. United Parcel Serv., Inc.*, No. 93 C 5660, 1994 WL 30552 (N.D.Ill. February 3, 1994), where Judge Kocoras found that the court had jurisdiction over a discharged UPS employee's Title VII claims despite the possible application of the RLA.