TRUAX, Appellant,

v.

EM INDUSTRIES, INC., Appellee.

[Cite as *Truax v. EM Industries, Inc.* (1995), 107 Ohio App.3d 210.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940623.

Decided Nov. 1, 1995.

*Tobias, Kraus & Torchia* and *David Torchia,* for appellant.

*Graydon, Head & Ritchey* and *Daniel E. Burke,* for appellee.

SHANNON, Judge.

Plaintiff-appellant, Dorothy Truax, was employed by EM Science, a division of defendant-appellee, EM Industries, Inc. On July 6, 1993, she filed an application for workers' compensation benefits for an injury which allegedly occurred on June 28, 1993. Subsequently, EM Science discharged appellant for filing a fraudulent workers' compensation claim.

Appellant filed a grievance pursuant to the collective-bargaining agreement between her union and EM Science, which provides that an employee may only be discharged for "just cause." The agreement defines a grievance as "a dispute raised with the Company by an employee or the Union as to the meaning or application of any provisions of this Agreement." It sets forth a grievance procedure which culminates in binding arbitration and provides that "[t]he sole

function of the arbitrator shall be to determine whether or not the rights of the employee, as set forth in the grievance, have been violated."

Appellant's grievance ultimately went to arbitration. The arbitrator concluded that "she did not act in a manner which was consistent with her claim that she had suffered a serious back injury on June 28, 1993." Therefore, he denied appellant's grievance.

On January 14, 1994, appellant filed a complaint alleging that she had been fired in retaliation for filing her workers' compensation claim in violation of R.C. 4123.90. Appellee filed a motion for summary judgment alleging that appellant's claim was precluded by *res judicata* and collateral estoppel since the arbitrator had already concluded that she had been discharged for just cause. The trial court granted summary judgment in favor of appellee, holding that the arbitrator's finding was final and binding. This appeal followed.

In her sole assignment of error, appellant states that the trial court erred by granting appellee's motion for summary judgment. She contends that arbitration of her grievance under the terms of the collective-bargaining agreement did not preclude her statutory claim, relying on *Alexander v. Gardner–Denver Co.* (1974), 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147, and its progeny. We find this assignment of error to be well taken.

In *Gardner–Denver,* the discharged employee filed a grievance under the collective-bargaining agreement between the employer and the union. The agreement stated that no employee would be discharged except for "just cause." The agreement also contained an antidiscrimination clause and a broad arbitration clause covering "differences aris[ing] between the Company and the Union as to the meaning and application of the provisions of this Agreement" and "any trouble aris[ing] in the plant." *Id.* at 40, 94 S.Ct. at 1015, 39 L.Ed.2d at 153. An arbitrator concluded that the employee had been discharged for just cause. Subsequently, the employee filed a civil suit alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964. The trial court and the court of appeals concluded that the employee was bound by the arbitrator's award.

The United States Supreme Court reversed, holding that "the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII." *Id.* at 59–60, 94 S.Ct. at 1025, 39 L.Ed.2d at 164–165. It stated:

"We are also unable to accept the proposition that petitioner waived his cause of action under Title VII. To begin, we think it clear that there can be no

prospective waiver of an employee's rights under Title VII. It is true, of course, that a union may waive certain statutory rights related to collective activity, such as the right to strike. * * * These rights are conferred on employees collectively to foster the processes of bargaining and properly may be exercised or relinquished by the union as collective-bargaining agent to obtain economic benefits for union members. Title VII, on the other hand, stands on plainly different ground; it concerns not majoritarian processes, but an individual's right to equal employment opportunities. Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices. Of necessity, the rights conferred can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII. In these circumstances, an employee's rights under Title VII are not susceptible of prospective waiver." *Id.* at 51, 94 S.Ct. at 1021, 39 L.Ed.2d at 160.

Next, the court decided *Barrentine v. Arkansas–Best Freight Sys., Inc.* (1981), 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641, in which several union truck drivers filed a grievance claiming they were entitled to certain payments under the collective-bargaining agreement between the union and their employer. The collective-bargaining agreement stated that "there shall be no strikes, lockouts, tieups, or legal proceedings without first using all possible means of settlement as provided for in this Agreement and in the National Agreement, if applicable, of any controversy which might arise." *Id.* at 731, 101 S.Ct. at 1440, 67 L.Ed.2d at 648, fn. 5. After losing in arbitration, the truck drivers filed suit against their employer, claiming they were entitled to compensation under the Fair Labor Standards Act, Section 201 *et seq.*, Title 29, U.S.Code. The trial court ruled against the truck drivers, and the court of appeals affirmed, finding that because the truck drivers had voluntarily submitted their grievances to arbitration, they were barred from asserting their statutory wage claim in the federal court action.

The United States Supreme Court reversed. Relying on *Gardner–Denver*, it held that the truck drivers' FLSA claim was not barred by the prior submission of their grievances to contractual dispute-resolution procedures. *Id.* at 745, 101 S.Ct. at 1447, 67 L.Ed.2d at 656–657. It stated that collective-bargaining agreements often do not protect an individual employee's right to a minimum wage and overtime pay under the Act, which is nonwaivable and cannot be abridged by contract. The court further stated:

" * * * Not all disputes between an employee and his employer are suited for binding resolution in accordance with the procedures established by collective bargaining. While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights

arising out of a statute designed to provide minimum substantive guarantees to individual workers." *Id.* at 737, 101 S.Ct. at 1443, 67 L.Ed.2d at 651.

Subsequently, the court decided *McDonald v. W. Branch Michigan* (1984), 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302. In that case, the petitioner, who had been discharged from the city's police force, filed a grievance pursuant to the collective-bargaining agreement between the city and the police union. The grievance ultimately went to arbitration, and the arbitrator ruled against the petitioner, finding that there was just cause for his discharge. The petitioner filed an action against the city, the police chief and other defendants under Section 1983, Title 42, U.S.Code, alleging that he had been discharged for exercising his First Amendment rights. The jury returned a verdict against the police chief. The Sixth Circuit reversed the judgment against the police chief, holding that the petitioner's First Amendment claims were barred by *res judicata* and collateral estoppel. The Supreme Court reversed, finding the doctrines of *res judicata* and collateral estoppel inapplicable based on its previous holdings in *Gardner–Denver* and *Barrentine.*

Along the same lines, the Ohio Supreme Court decided *Youghiogheny & Ohio Coal Co. v. Oszust* (1986), 23 Ohio St.3d 39, 23 OBR 57, 491 N.E.2d 298, in which a union employee sustained a back injury and received sickness and accident benefits from the employer's insurance carrier. The company doctor issued a report on August 25, 1982, in which he stated that the employee could return to work. Subsequently, the insurance carrier notified the employee it would discontinue benefits as of August 18, 1982. After receiving the consent of his physician, the employee returned to work on September 7, 1982. The employee filed a grievance over denial of his benefits from August 18 to September 7 and an arbitrator denied the grievance, concluding that for the disputed period, the employee was not so disabled as to have been prevented from performing his work. Subsequently, the employer discharged the employee for being absent without the employer's consent as provided for in the collective-bargaining agreement. The employee filed a grievance over his discharge and the arbitrator denied the grievance, finding that the employee had been discharged for just cause.

The employee applied for unemployment compensation. The Unemployment Compensation Board of Review determined that the employee had obeyed his doctor's instructions and had returned to work as soon as authorized by his doctor. Thus the employee's discharge was without "just cause in connection with work" as contemplated by R.C. 4141.29(D)(2)(a). The court of common pleas held that the arbitrator's decision that there was just cause for the employee's discharge within the meaning of the collective-bargaining agreement precluded all subsequent proceedings involving the same issue. The court of appeals reversed

the decision of the common pleas court. The Supreme Court affirmed, holding in the syllabus:

"A private arbitrator's determination upholding an employee's discharge for 'just cause' according to the terms of the applicable collective bargaining agreement does not preclude the Ohio Bureau of Employment Services from concluding that the employee was not 'discharged for just cause in connection with his work' within the meaning of R.C. 4141.29(D)(2)(a)."

While noting that Ohio courts have favored arbitration, the Supreme Court nevertheless stated that the issued resolved by the arbitrator differed significantly from the issue presented to the Ohio Bureau of Unemployment Services. Thus, the arbitrator's determination, while final as to the validity of the discharge under the collective-bargaining agreement, did not take into consideration the employee's eligibility for unemployment compensation. It went on to state that "[t]he arbitrator is bound to interpret and apply the collective bargaining agreement in accordance with instructions from the parties to the agreement. The arbitrator simply has no authority to invoke this state's unemployment compensation laws in reaching a decision, regardless of the similarity of contractual language found within the substantive provisions of the statute." 23 Ohio St.3d at 41, 23 OBR at 59, 491 N.E.2d at 300. Citing *Gardner–Denver*, the court further stated that by filing a claim for unemployment compensation, the employee was "asserting a statutory right independent of the arbitration process." *Id.* See, also, *Ervin v. Am. Funding Corp.* (1993), 89 Ohio App.3d 519, 625 N.E.2d 635; *Dean v. Miami Valley Hosp., Inc.* (Feb. 22, 1988), Montgomery App. No. CA 10391, unreported, 1988 WL 25874.

*Gardner–Denver* and its progeny, including *Oszust,* dictate a reversal in this case. See, also, *Lingle v. Norge Div. of Magic Chef, Inc.* (1988), 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (factual inquiry whether employer had a nonretaliatory reason for discharge of an employee who filed a workers' compensation claim did not turn on the meaning of any provision of the collective-bargaining agreement and therefore the state-law claim was independent of the collective-bargaining agreement and not preempted by federal labor law). Appellee argues that *Gilmer v. Interstate/Johnson Lane Corp.* (1991), 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26, implicitly overruled the *Gardner–Denver* line of cases and that they are no longer good law. We disagree.

In *Gilmer,* the petitioner's employer required him to register as a securities representative with the New York Stock Exchange. His registration application contained an agreement to arbitrate when required by NYSE rules, one of which provided for arbitration of any controversy arising out of a registered representative's employment or termination of employment. After the employer discharged the sixty-two-year-old petitioner, he filed suit alleging age discrimination. The

employer moved to compel arbitration and the trial court denied the motion based on *Gardner–Denver*. The court of appeals reversed and the Supreme Court affirmed the appellate court's decision.

The Supreme Court discussed extensively the Federal Arbitration Act and the public policies favoring arbitration. It held that statutory claims may be the subject of an arbitration agreement, enforceable under the FAA. "[W]e recognized that '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652, 114 L.Ed.2d at 37, quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.* (1985), 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444, 456. The court went on to state that "[a]lthough all statutory claims may not be appropriate for arbitration, '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Id.*

While it rejected *Gardner–Denver's* assertion that arbitration was not an appropriate forum to determine statutory claims, the court ultimately found the *Gardner–Denver* line of cases to be distinguishable. It stated that in *Gardner–Denver*, it had stressed that an employee's contractual rights under a collective-bargaining agreement are distinct from the employee's statutory Title VII rights, that a labor arbitrator has authority only to resolve questions of contractual rights, and that in collective-bargaining arbitration, the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit. *Gilmer, supra,* 500 U.S. at 33–35, 111 S.Ct. at 1656, 114 L.Ed.2d at 41–43.

"There are several important distinctions between the *Gardner–Denver* line of cases and the case before us. First, those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case. Finally, those cases were not decided under the FAA, which, as discussed above, reflects a 'liberal federal policy favoring arbitration agreements.'" *Id.* at 35, 111 S.Ct. at 1657, 114 L.Ed.2d at

43. See, also, *Livadas v. Bradshaw* (1994), 512 U.S. ——, 114 S.Ct. 2068, 129 L.Ed.2d 93.

Courts have applied *Gilmer* when an individual signed an agreement to arbitrate all claims. See *Neubrander v. Dean Witter Reynolds, Inc.* (1992), 81 Ohio App.3d 308, 610 N.E.2d 1089 (securities registration agreement); *Prudential Ins. Co. of Am. v. Lai* (C.A.9, 1994), 42 F.3d 1299 (securities registration agreement); *Williams v. Katten, Muchin & Zavis* (N.D.Ill.1993), 837 F.Supp. 1430 (law firm partnership agreement). However, in situations involving arbitrations mandated by collective-bargaining agreements, numerous courts have found the *Gardner–Denver* line of cases to be viable and have applied their reasoning. See *Martin Marietta Corp. v. Maryland Comm. on Human Relations* (C.A.4, 1994), 38 F.3d 1392; *Bates v. Long Island RR. Co.* (C.A.2, 1993), 997 F.2d 1028; *Randolph v. Cooper Industries* (W.D.Pa.1994), 879 F.Supp. 518; *Griffith v. Keystone Steel & Wire* (C.D.Ill.1994), 858 F.Supp. 802; *Block v. Art Iron, Inc.* (N.D.Ind.1994), 866 F.Supp. 380; *Greene v. United Parcel Serv.* (N.D.Ill.1994), 864 F.Supp. 48; *Schmidt v. Safeway, Inc.* (D.Ore.1994), 864 F.Supp. 991; *Bintner v. Burlington N., Inc.* (D.Wyo.1994), 857 F.Supp. 1484; *Adams v. Burlington N. RR. Co.* (D.Kan.1994), 843 F.Supp. 686; *Claps v. Moliterno Stone Sales, Inc.* (D.Conn.1993), 819 F.Supp. 141. But, see, *Springfield Terminal Ry. Co. v. United Transp. Union* (D.Me.1991), 767 F.Supp. 333. "Nothing in *Gilmer* suggests that the Court abandoned its concern about the inherent conflicts between group goals and individual rights that exist in the give-and-take of the collective bargaining process." *Randolph, supra,* 879 F.Supp. at 521.

 Collateral estoppel precludes relitigation only when the identical issue was actually decided in the former case. *Adams v. Harding Machine Co.* (1989), 56 Ohio App.3d 150, 154, 565 N.E.2d 858, 861. "[A]n absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 201, 2 OBR 732, 739, 443 N.E.2d 978, 985. The *Gardner–Denver* line of cases indicates that the issues decided in an arbitration involving a grievance under a collective-bargaining agreement and a statutory claim for retaliatory discharge are not the same. Therefore, the issue raised by appellant in the case before the trial court was not the same as that raised in arbitration and appellant's claim was not barred by collateral estoppel.

 Similarly, the doctrine the *res judicata* provides that "[a] valid, final judgment upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d

226, syllabus. In the arbitration, the relevant facts related to whether appellant was discharged for just cause under the collective-bargaining agreement, not whether her individual rights were violated by being discharged for filing a workers' compensation claim. Therefore, they do not involve the same transaction or occurrence, and her statutory claim is not barred by *res judicata*. See *McDonald, supra,* at 289–291, 104 S.Ct. at 1803–1804, 80 L.Ed.2d at 307–309. Accordingly, we sustain appellant's sole assignment of error, reverse the trial court's judgment and remand the case to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

DOAN, P.J., and PAINTER, J., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.