Defendant Dan McKimm appeals a judgment of the Court of Common Pleas of Stark County, Ohio, which found he had libeled plaintiff Randy Gonzalez in a political brochure distributed before the November, 1995 election for Jackson Township Trustee, wherein the two were adversaries for the same position. McKimm assigns nine errors to the trial court:
ASSIGNMENTS OF ERROR
 I. THE COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTIONS FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT FOR THE REASON THAT THE STATEMENTS AND CARTOONS ARE NOT AS A MATTER OF LAW DEFAMATORY.
 II. THE COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT FOR THE REASON THAT THE STATEMENTS AND CARTOONS ARE CONSTITUTIONALLY PRIVILEGED OPINION.
 III. THE COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTIONS FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT FOR THE REASON THAT THERE IS NO EVIDENCE IN THE RECORD DEMONSTRATING THAT THE SPEAKER PUBLISHED A PROVABLY FALSE STATEMENT WITH ACTUAL MALICE.
 IV. THE COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR NEW TRIAL OR IN THE ALTERNATIVE FOR JUDGMENT NOTWITHSTANDING THE VERDICT FOR THE REASON THAT THE COURT'S INSTRUCTION TO THE JURY THAT IT "MUST CONSIDER" WHETHER THE PARTISAN CAMPAIGN MATERIAL WAS "THE RESULT OF DELIBERATELY ONE-SIDED OR SELECTIVE REPORTING WHICH OMITTED MATTERS KNOWN TO THE DEFENDANT AND THEREBY DISTRACTED FROM THE TRUTH OF THE PUBLISHED STORY OR REPORT" PREJUDICIALLY DEPRIVED APPELLANT THE CONSTITUTIONAL PROTECTION AFFORDED PARTISAN SPEECH.
 V. THE COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR NEW TRIAL OR IN THE ALTERNATIVE FOR JUDGMENT NOTWITHSTANDING THE VERDICT FOR THE REASON THAT THE COURT ERRONEOUSLY REFUSED TO ADMIT DOCUMENTS UPON AND TO WHICH APPELLANT RELIED WHICH HE REFERRED IN FORMING A BELIEF REGARDING THE TRUTH OF APPELLANT'S STATEMENTS.
 VI. THE COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR NEW TRIAL OR IN THE ALTERNATIVE FOR JUDGMENT NOTWITHSTANDING THE VERDICT FOR THE REASON THAT THE COURT ERRONEOUSLY REFUSED TO ADMIT DOCUMENTS AND TESTIMONY WHICH WOULD REBUT APPELLEE'S ASSERTION THAT HE LOST THE ELECTION AND SUFFERED DAMAGE TO HIS REPUTATION AS A RESULT OF THE APPELLANT'S STATEMENTS.
 VII. THE COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTIONS FOR DIRECTED VERDICT OR FOR JUDGMENT NOTWITHSTANDING THE VERDICT FOR THE REASON THAT THERE WAS NO EVIDENCE OF PROXIMATE CAUSE FOR APPELLEE'S SPECIAL DAMAGES, AND APPELLEE MAY NOT, AS A MATTER OF LAW RECOVER ACTUAL DAMAGES.
 VIII. THE COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR NEW TRIAL OR IN THE ALTERNATIVE FOR JUDGMENT NOTWITHSTANDING THE VERDICT FOR THE REASON THAT APPELLEE WAS NOT ENTITLED TO SEEK OR RECOVER PUNITIVE DAMAGES.
 IX. THE COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR NEW TRIAL OR IN THE ALTERNATIVE FOR JUDGMENT NOTWITHSTANDING THE VERDICT FOR THE REASON THAT THE COURT ERRONEOUSLY FAILED TO SUBMIT AN INSTRUCTION REGARDING INCREMENTAL CAUSE IN THAT THERE EXISTED NUMEROUS CAUSES OF PLAINTIFF'S CLAIMED DAMAGE ALTERNATE TO THE ALLEGEDLY DEFAMATORY STATEMENTS.
Plaintiff Randy Gonzalez assigns two errors to the trial court in his cross-appeal
ASSIGNMENTS OF ERROR
 ASSIGNMENT OF ERROR NO. I: THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED THE DEFENDANTS/CROSS APPELLEES CRAIG SNEE AND MIKE SNEE'S MOTION FOR DIRECTED VERDICT WHERE THERE WAS AMPLE EVIDENCE THAT THEY PUBLISHED THE BROCHURE.
 ASSIGNMENTS OF ERROR NO. II: THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT OVERRULED PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WHERE THERE WERE NO MATERIAL ISSUES OF FACT SUCH THAT APPELLEE WAS ENTITLED TO PARTIAL SUMMARY JUDGMENT BASED UPON THE DOCTRINE OF RES JUDICATA.
In 1995, Gonzalez was the incumbent in a hotly contested election for the position of township trustee in Jackson Township, Stark County, Ohio. McKimm was his opponent. A few days before the election, McKimm, and defendants cross appellees Mike and Craig Snee, distributed a brochure to the registered voters of Jackson Township. Craig Snee was appellant's campaign manager. The brochure contained certain information which Gonzalez maintains is libelous. A copy of the brochure is appended to this opinion as Appendix A.
Item No. 7 of the flyer states: a) trustees have a policy of bidding all contracts greater than $10,000 b) Randy Gonzalez ignored bidding policy. He voted to contract with an architect for $51,000 to design the social hall (pavilion) without takingbids. Emphasis sic.
Gonzalez does not dispute the statements are true. However, Gonzalez argues the cartoon which accompanies it is libelous. The cartoon depicts the drawing of a table. Beneath the table is a hand grasping a bundle of money. Slashes on both sides of the hand indicate movement.
No one argued the cartoons contained in the flyer were intended to be realistic depictions of events. The parties differed regarding the reasonable interpretation of the cartoon. Gonzalez argued the cartoon implied that he accepted money "under the table", that is, accepted a bribe in return for awarding the contract without going through the bid process. In the alternative, Gonzalez argues there are two other possible interpretations, both libelous. McKimm argues the expression "under the table" does not necessarily imply bribery, but rather, implies paying someone's salary under the table so the person can avoid paying taxes. The third alternative offered was the drawing depicted a transaction which was "below board" or "out of public view". Gonzalez asserts any one of these interpretations implies criminal activity, namely, taking a bribe, conspiring to commit tax evasion, or violating Ohio's Sunshine Laws. McKimm asserts, the cartoon drawing on its face, merely invites the readers to impart their own values and interpretation on the picture. McKimm argues it represents an attempt to convey irresponsible financial habits.
This was a proceeding only in defamation, requesting compensatory and punitive damages resulting from the publication of campaign literature. It is undisputed that Gonzalez was a public figure, i.e., an elected official, Jackson Township Trustee.
Before addressing any assignments of error, we first discuss the relevant law.
In New York Times Company v. Sullivan (1964), 376 U.S. 254, the United States Supreme Court held the First Amendment to the United States Constitution places limits on the application of state law of defamation. The Supreme Court found it was necessary for a public figure to prove a statement was made with actual malice, that is, with knowledge that it was false or with reckless disregard of whether or not it was false, before the public official may recover damages for defamatory falsehood relating to his official conduct, Sullivan, at 279-280. This was an attempt to balance the right of free speech with a guarantee of the truth of a criticism of a political official in his conduct of governmental affairs, seeGertz v. Robert Welch, Inc. (1974), 418 U.S. 323. In Gertz, the Supreme Court noted that public officials and public figures usually enjoy greater access to the channels of effective communication, and this gives them a more realistic opportunity to counteract false statements made against them than a private individual enjoys, Gertz at 344.
In Bose Corporation v. Consumer's Union of United States,Inc. (1984), 466 U.S. 485, the Supreme Court directed appellate courts to make an independent examination of the entire record in order to ensure there was no intrusion into the field of free expression, Bose at 499. ". . . [T]he question whether the evidence in the record of the defamation case is sufficient to support a finding of actual malice is a question of law....."Harte-Hanks Communications, Inc. v. Connaughton (1989),491 U.S. 657 at 685.
In Gertz, supra, the Supreme Court noted there is a distinction to be drawn between opinion, which cannot, by definition, be "false", from a false statement of fact, Gertz
at 339. However, in Milkovich v. Lorain Journal Company (1990),497 U.S. 1, the United States Supreme Court, in reviewing a decision by the Ohio Supreme Court, felt the need to explain and refine the distinctions between opinion and fact.
In Milkovich, a former high school wresting coach sued a newspaper for defamation. After a convoluted procedural history, the Ohio Supreme Court eventually found the statements made about the coach were not defamatory because they were protected by constitutional privilege for opinions, citingGertz, supra. In Milkovich, the United States Supreme Court held a separate constitutional privilege for opinion was not required in addition to the already established safeguards regarding defemation in order to insure the freedoms guaranteed by the First Amendment. In Gertz, the Supreme Court had noted the correction of a false opinion is not for judges and juries, but rather for the "pure competition" of other ideas. InMilkovich, the United States Supreme Court asserted an expression of opinion may often imply, or even overtly state an assertion of objective fact. When a speaker states the facts upon which he basis his opinion, if the facts are incomplete or incorrect, or if his assessment of the facts is erroneous, the statement implies a false assertion of fact. Simply labeling these statements "opinion" does not dispel the implication the speaker is making an assertion of fact. The Supreme Court contrasted the statement "in my opinion Jones is a liar" with the statement "Jones is a liar". The Supreme Court noted such an opinion will damage someone's reputation just as much as a pure statement of fact. The Supreme Court directed that allegedly libelous statements of opinion be examined to determine if they are factual, that is, susceptible of being proven true or false. Thus, the Supreme Court held where a statement of opinion on a matter of public concern reasonably implies false or defamatory facts regarding public figures or public officials, those individuals must show such statements were made with knowledge of false implication or with reckless disregard of their truth. Because of the enhanced appellate review required by Bose Corporation, supra, the Supreme Court expressed its assurance that courts will make their determinations in a manner designed so as not to constitute a forbidden intrusion into free expression. Milkovich at 20.
Recently, the Ohio Supreme Court decided the case of Vail v.The Plain Dealer Publishing Company (1995), 72 Ohio St.3d 279. In Vail, the Supreme Court found that in determining whether the speech is protected opinion, the court must consider the totality of the circumstances. The determination of whether the allegedly defamatory language is opinion or fact is a question of law to be decided by the court, not the jury. The Supreme Court also held the Ohio Constitution provides a separate and independent guarantee of protection for opinion.
In Vail, the Supreme Court held:
 When determining whether speech is protected opinion, a court must consider the totality of the circumstances. Specifically, a court should consider: the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared.
Syllabus by the court, citations deleted.
The Supreme Court, citing Scott v. News-Herald (1986),25 Ohio St.3d 243 at 250, noted that the determination of whether an allegedly defamatory statement is opinion or fact is a question of law for the court, not the jury, Vail at 280.
Discussing Milkovich, the Ohio Supreme Court asserted the United States Supreme Court refused to provide opinion with additional protection under the United States Constitution, but nevertheless, Ohio would adhere to providing a separate and independent guarantee of protection for opinion, Vail at 281. The court noted, however, the distinction is not as great as it may appear, because, as Justice Brennan observed in his dissent to Milkovich, the factors used to determine whether a statement implies actual facts are the same factors lower courts have already relied upon to distinguish between statements of fact and statements of opinion, namely, the type of language used, the meaning of the statement in its context, whether the statement contains verifiable facts, and the broader social context in which the statement was made, Vail at 281, citingMilkovich at 24.
In Vail, the Supreme Court reiterated its totality of circumstances test first enunciated in Scott, supra. The court must consider the specific language used, the verifiability of the statement, the general, and the broader context of the statement. The Supreme Court cautioned this is not a bright line test, but rather establishes parameters within with each statement may stand on its merits rather than be subject to a mechanistic standard, Vail, id, citing Scott, supra, at 250.
Gonzalez, the plaintiff, has the burden of proving the statements were defamatory and were made with actual malice,Sullivan at 281.
Interestingly, pursuant to Civ. R. 50, the trial court must construe the evidence most strongly in favor of the non-moving party. In a First Amendment case, however, the court must afford the constitutional privilege all possible protection by requiring the plaintiff to prove its case by clear and convincing evidence. Thus, there is some tension between the competing standards for the trial court and for us in ourde novo review, to balance.
Against the framework set forth by the United States Supreme Court, as supplemented and explained pertaining to the Ohio Constitution by the Ohio Supreme Court, we address each of the assignments of error.
 I
McKimm moved for a directed verdict, and later, a judgment notwithstanding the verdict, urging the trial court that the statements and the cartoons are not defamatory as a matter of law. The court overruled the motion for directed verdict, as well as the motion for judgment notwithstanding the verdict, and the jury returned a verdict in favor of appellee in the amount of $38,000 for compensatory damages and $25,000 punitive damages.
McKimm argues because the cartoon is capable of an innocent interpretation, and because appellant characterizes Gonzalez's proposed interpretations as unreasonably strained, we should find as a matter of law the cartoon has no defamatory meaning.
We have reviewed the record, considering the totality of the circumstances, and applying the test set forth in Vail, supra,
and this court finds as a matter of law Gonzalez has proven by clear and convincing evidence the cartoon can be reasonably interpreted as defamatory.
We find the trial court did not err in refusing to hold the cartoon was not actionable as a matter of law. Accordingly, the first assignment of error is overruled.
 II
In his second assignment of error, McKimm argues the statements and cartoons are constitutionally privileged opinion, and as such, cannot be defamatory.
At the outset, we find the statement at issue here is not a statement of "pure opinion". Use of cartoons presents an especially interesting situation because, even more so than the written word, a picture is capable of any number of interpretations. Here, the cartoon is definitely a picture worth a thousand words.
McKimm argues the allegedly defamatory statements are opinion, hyperbole, and satire. Taken as a whole, the brochure refers to personal characters, and the use of cartoons places the reader on notice the drawings do not reflect actual realistic events. McKimm argues the cartoon is ambiguous, and possibly symbolic. Appellant argues there is little if anything verifiable about the cartoons.
Nevertheless, given Gonzalez's proposed explanations that the cartoon refers to taking a bribe, conspiring to tax evasion, or violating Ohio's Sunshine Act, these are all assertions of fact which are indeed verifiable pursuant to Scott, supra.
Finally, taking the alleged defamatory statements in the broader context in which they appear, McKimm argues rather cynically that campaign literature is often outrageous, unjustified, unreasonable, or derogatory. We decline to hold this is acceptable.
We find, applying the test of Vail, supra, this speech is not protected opinion when considering the totality of circumstances. Accordingly, we conclude the trial court correctly declined to find as a matter of law the statements were statements of opinion which is constitutionally protected under the Ohio Constitution.
The second assignment of error is overruled.
 III
In his third assignment of error, McKimm argues the court should have found as a matter of law there was no evidence in the record demonstrating appellant published a provably false statement with actual malice.
As the United States Supreme noted in Sullivan, supra, good motives and beliefs in truth do not negate an inference of malice, but are relevant only to mitigate punitive damages if the jury chooses to believe them, Sullivan at 267, citations deleted. The Sullivan court defined the term actual malice as made with knowledge that the statement was false or with reckless disregard of whether it was false or not, Sullivan at 279.
In the case at bar, McKimm concedes a variety of interpretations point to assertions Gonzalez acted illegally. McKimm also concedes he had no information regarding any actual illegal acts Gonzalez may have made. McKimm asserts he knew or believed his assertions of fact were true, namely, the trustees had a policy of bidding on contracts, which Gonzalez ignored in this circumstance. McKimm argues this is sufficient for us to define there was no actual malice. To the contrary, we find there was sufficient evidence presented that McKimm published provably false statements, that is, the cartoon itself, implying illegality, either with knowledge that it was untrue or with reckless disregard as to whether it was true. Accordingly, we find the trial court properly found the matter was appropriate for final determination by the jury.
The third assignment of error is overruled.
 IV
In his fourth assignment of error, McKimm challenges a jury instruction. The court instructed the jury it had to consider whether McKimm had published the material in a deliberately one-sided manner, or selectively reported and omitted matters he knew, thereby detracting from the truth of the publication. McKimm argues this prejudicially deprived him of the constitutional protection accorded partisan speech.
Gonzalez suggests McKimm failed to object to the jury instruction on that ground. McKimm's counsel argued to the court statements of political opinion and campaign brochures are intended to be one sided, and thus, the instruction would be misleading to the jury.
We will construe counsel's objection as appropriate, because we prefer to address this matter on its merits, rather than rejecting it as waived. As Gonzalez points out, the court's instruction informed the jury it must determine whether the McKimm had knowledge of facts which he deliberately omitted from the brochure in order to convey an incorrect inference. We find this is a correct statement of Ohio law, see III, supra,
and accordingly, we overrule the fourth assignment of error.
 V
In his fifth assignment of error, McKimm challenges the court's refusal to admit documents upon which McKimm argued he relied upon in forming his beliefs about the truth of the matters depicted in the cartoon. The court excluded some 15 exhibits as hearsay. Evid. R. 801 (C) defines hearsay as a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. McKimm argues he did not offer these exhibits to prove the truth of the matter contained in them, but rather, to show his state of mind, see Evid. R. 803.
Gonzalez argues the evidence was irrelevant because McKimm and defendant Craig Snee both admitted they were unaware of any illegal acts Gonzalez committed while in office. In addition, Gonzalez points out the court originally ruled to allow admission of McKimm's exhibits provided McKimm redacted any hearsay. McKimm did not do so, and Gonzalez urges McKimm waived any right to have the evidence admitted by failing to comply with the trial court's directive.
In State v. Sage (1987), 31 Ohio St.3d 173, the Ohio Supreme Court found a trial court enjoys broad discretion in determining the admissibility of evidence, and reviewing courts should not disturb the court's rulings unless we find an abuse of discretion.
We have reviewed the record, and we find the trial court did not err in finding the documents were not admissible. Accordingly, the fifth assignment of error is overruled.
 VI
At trial, Gonzalez argued he lost the election to McKimm and suffered damage to his reputation as a result of the public statement and cartoon. McKimm argues he offered two exhibits, which were properly self-authenticating public records, to rebut Gonzalez's claim he lost the election because of the distribution of the these brochures. The court also excluded the defendants' testimony regarding their opinion Gonzalez did not lose the election as a result of the statement, even though Gonzalez was permitted to testify it was his opinion the brochure caused him to lose the election.
The trial court excluded documentary evidence, in the form of copies of the election results of two different campaigns involving Gonzalez with three different opposing candidates for election. Gonzalez argues this evidence was irrelevant, and properly excluded. Regarding the proposed expert opinion defendant Craig Snee wished to offer regarding whether Gonzalez lost the election because of the brochure, the trial court ruled the defense had not laid a proper foundation for the expert opinion.
Our review of the evidence leads us to conclude the trial court properly excluded the evidence. Much of the evidence offered was not probative of any fact in dispute, and could have misled the jury. Finally, the trial court's determination regarding expert opinions is supported by the record. We conclude the trial court did not commit an abuse of discretion in excluding this evidence.
The sixth assignment of error is overruled.
 VII
McKimm argues Gonzalez did not meet his burden of proving proximate cause for the special damages, and further argues Gonzalez may not, as a matter of law, recover actual damages. McKimm argues Gonzalez's assertion that he lost the election because of the brochures is pure speculation, not sufficient to show proximate cause. Gonzalez presented the testimony of one voter, who testified he changed his vote based upon the brochure.
Punitive damages are damages given in enhancement of compensatory damages or because of the wanton, reckless, malicious, or oppressive character of the acts complained of,Trainor v. Deters (1969), 22 Ohio App.2d 135. Punitive damages are available in actions for defamation where there is evidence of actual malice, Thomas H. Maloney Sons v. E. W. Scripp'sCo. (1975), 43 Ohio App.2d 105. If a jury determines a defendant's actions were sufficiently egregious, it may appropriately award punitive damages in addition to the compensatory damages. The jury did so here.
We find McKimm's assignment of error is not well taken, and accordingly, we overrule the seventh assignment of error.
 VIII
Next, McKimm argues Gonzalez was not entitled to seek or recover punitive damages. Appellant reasons because Gonzalez had to demonstrate actual malice in order to recover at all, there is no higher degree of culpability Gonzalez could prove to justify punitive damages. We find merely because Gonzalez had to plead and prove actual malice in order to recover for compensatory damages, Gonzalez is not barred from recovering punitive damages, if the jury sees fit to award them, seeRobb, supra.
The eighth assignment of error is overruled.
 IX
In his final assignment of error, McKimm argues the trial court should have granted him a new trial or a judgment notwithstanding the verdict because it erroneously failed to submit an instruction regarding incremental cause even though the evidence presented numerous possible causes of Gonzalez's claimed damages in addition to the allegedly defamatory statement. McKimm argues because the court failed to instruct the jury on incremental cause, the jury was forced to attribute all the damage suffered by appellee to the defamatory statements. However, McKimm does not set forth the alternative numerous causes of the claimed damage, except to assert that certain true statements made by appellant also damaged Gonzalez's reputation.
We find the record does not contain sufficient evidence warranting an instruction on incremental causes. Accordingly, the ninth assignment of error is overruled.
We turn now to Gonzalez's cross assignments of error.
 I
In his first assignment of error, Gonzalez argues the trial court erred as a matter of law when it granted defendants Craig and Mike Snee's motion for directed verdict. Gonzalez argues he produced evidence both Snees cooperated with McKimm in producing the flyer, and Craig Snee distributed the flyer.
McKimm and Snee respond there was no evidence produced of any actual malice. Mike Snee produced the publication by providing graphic and layouts services, but McKimm has admitted sole responsibility for content of the flyer. Cross appellee Craig Snee admitted showing certain drafts of the flyer to three persons, but no evidence was presented regarding whether those drafts were identical to the final product, nor what the actual content of the drafts was.
Gonzalez attempted to present evidence of prior campaign tactics by Craig Snee in 1993. Gonzalez argues this evidence would have shown cross-appellee Craig Snee had used a similar scheme or plan two years earlier.
We find there was no evidence of actual malice presented. The trial court did not abuse its discretion in refusing to admit the evidence. The first cross assignment of error is overruled.
 II
In his second cross assignment of error, Gonzalez argues the principles of collateral estoppel and res judicata should have resulted in summary judgment in his favor.
Gonzalez brought an action before the Ohio Election Commission, complaining McKee and cross-appellees violated R.C. 2517.21, disseminating a false statement concerning a candidate. Gonzalez argues the defendants were either parties or were in privity to the OEC proceedings, the OEC issued a final judgment on the merits of the complaint after fully litigating the issues, and the issues litigated in the Ohio Elections Commission Action were identical to the issues in this case. In Set Products, Inc. v. Bainbridge Township Boardof Zoning Appeals (1987), 31 Ohio St.3d 260, the Ohio Supreme Court found issue preclusion and claim preclusion applies to those administrative proceedings which are of a judicial nature and where the parties have had ample opportunity to litigate the issues involved. In addition, the Doctrine of Collateral Estoppel bars the parties to an action from re-litigating issues of fact which were pasted upon in an earlier action by a tribunal of competent jurisdiction.
The Doctrine of Collateral Estoppel precludes re-litigation only if the identical issues were actually decided in the former case, see Truax v. EM Industries, Inc. (1995), 107 Ohio App.3d 210. Likewise, in State ex rel. Kroger Company v.Industrial Commission of Ohio (1998), 80 Ohio St.3d 649, the Ohio Supreme Court held res judicata precludes re-litigation on a point of law or fact at issue in a former action between the same parties and past upon by a court of competent jurisdiction. Administrative proceedings can be courts of competent jurisdiction.
We find the administrative proceedings here were of limited jurisdiction, and did not have jurisdiction to review tort claims. Accordingly, we conclude the determination of the OEC does not invoke the principles of res judicata or collateralestoppel in this tort action.
The second cross assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
By Gwin, J., Farmer, P.J., Wise, Earle, V.J.
--------------------
--------------------
 -------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to be split between appellant and appellee.
--------------------
--------------------
 -------------------- JUDGES