This appeal comes for consideration upon the record of the trial court and the parties' briefs. Appellant Colleen Felger (hereinafter "Ms. Felger") timely appeals the judgment of the Columbiana County Court of Common Pleas granting summary judgment in favor of Appellee Tubetech, Inc. (hereinafter "Tubetech"). As the trial court erred in granting partial summary judgment on two counts of Ms. Felger's complaint, we reverse the decision of the trial court and remand this matter for further proceedings.
Ms. Felger had been employed by Tubetech since 1988 and had acted as union president during this time. On April 21, 1994 Ms. Felger was injured on the job resulting in her filing a workers' compensation claim. Thereafter, Ms. Felger went through rehabilitation and was later re-employed by Tubetech. She returned to work in a light-duty position with an eye towards regaining her former job. However, on November 7, 1995, Tubetech discharged Ms. Felger after she allegedly made repeated allusions to violence and threatened to injure both the company president and her co-workers.
Ms. Felger filed a grievance on November 10, 1995 alleging her discharge was without just cause in a violation of the collective bargaining agreement. As her remedy, Ms. Felger requested reinstatement and back pay, contending the discharge was in fact due to a pattern of company sanctioned discrimination and harassment arising from both her worker's compensation claim and performance of union business. Ms. Felger's claim was brought to arbitration by her union on February 27, 1996 where it was decided Tubetech had discharged Ms. Felger for just cause, specifically finding that she was not fired discriminatorily or retaliatorily.
On May 6, 1996, Ms. Felger apparently filed a state-law complaint based on her claim that she was fired in retaliation for pursuing her rights under the workers' compensation laws. In November of that year, she voluntarily withdrew the complaint.Subsequently, Ms. Felger filed a complaint in the United States District Court for the Northern District of Ohio. In that action, the district court granted motions for partial summary judgment for Tubetech as to federal claims of employment discrimination based on sex and disability, and retaliation claims stemming from these. On July 30, 1998, the district court dismissed the remaining supplemental state law claims without prejudice.
Ms. Felger then filed a seven count complaint in state court on January 7, 1999, which alleged she was subjected to: 1) sex discrimination due to a hostile work environment; 2) retaliatory actions by her employer because she raised/reported the alleged sex discrimination; 3) handicap discrimination on the part of her employer because it failed to reasonably accommodate her alleged disability; 4) retaliatory actions by her employer because she raised a disability claim; 5) retaliation on the part of her employer for filing a workers' compensation claim and pursuing her rights under the workers' compensation system; and, 6) intentional infliction of emotional distress, which claim appears to arise out of all of the above allegations. Finally, Ms. Felger's husband alleged a loss of consortium claim stemming from the above allegations.
Ms. Felger filed a motion for partial summary judgment in the state court matter. In the meantime, the United States Court of Appeals for the Sixth Circuit reversed the District Court's ruling in part. The Sixth Circuit found the District Court used the wrong standard to grant summary judgment to Tubetech because of certain new law arising in the district. Thus, it remanded Ms. Felger's sex discrimination claims back to the District Court. It affirmed, however, the decision in favor of Tubetech as to Ms. Felger's federal disability claims.
In the state court action, the trial court granted Tubetech summary judgment with regard to Ms. Felger's sex discrimination retaliation claim and her disability discrimination claim. Thus, claims regarding the underlying issue of sex discrimination, her disability retaliation claim, her intentional infliction of emotional distress claim and her husband's derivative loss of consortium claim remain pending for trial in the common pleas court. It should be noted that the trial court's order as to the above reflects that Tubetech apparently withdrew its request for summary judgment on the sexual discrimination retaliatory claim. The trial court, however, granted summary judgment on that issue after Tubetech tried to withdraw its request. In a later series of filings, where Ms. Felger seeks to have the trial court correct and/or clarify its entry, the trial court leaves the substance of this order intact but declares that there is no just reason for delay and, later, that it is a final and appealable order.
Before addressing Ms. Felger's assignments of error, we must first consider whether the order appealed from is a final appealable order. If not, this court lacks jurisdiction to consider the merits of the assigned errors and must dismiss the appeal.
The Supreme Court of Ohio has set forth a two pronged analysis appellate courts should apply when considering whether an order constitutes a final appealable order under Civ.R. 54. See Wisintainer v.Elcen Power Strut Co. (1993), 67 Ohio St.3d 352. We must determine 1) whether the order constitutes a final order as defined by R.C. 2505.02, and 2) whether the trial court's designation that "there is no just cause for delay" was appropriate. Id. at 354.
As such, we will first address whether the order appealed from in this case conforms with R.C. 2505.02:
"(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
An order that vacates or sets aside a judgment or grants a new trial;
An order that grants or denies a provisional remedy and to which both of the following apply:
The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.
An order that determines that an action may or may not be maintained as a class action.
Clearly, subsections 2-5 cannot apply. Accordingly, we must decide whether this partial summary judgment order affects a substantial right which effectively determines the outcome of the action and prevents the adverse party from obtaining a judgment on the issue or issues.
R.C. 2505.02 (A)(1) defines a substantial right as one, "* * * that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." Turning to the claims decided in the subject partial summary judgment, it can certainly be concluded that Ms. Felger's claims sounding in retaliation for raising sex discrimination complaints, her handicap or disability claims and her workers' compensation retaliation claims are all covered by this definition and must all be considered to be substantial rights. We must now determine whether the unfavorable disposition of these claims in effect determines their outcome and prevents Ms. Felger from obtaining a judgment upon them.
As the Supreme Court has stated, "A final order either disposes of the whole case or some separate and distinct branch thereof." Noble v.Colwell (1989), 44 Ohio St.3d 92, 94, citing Lantsberry v. Tilley LampCo. (1971), 27 Ohio St.2d 303, 306. In the present case, the order fromwhich Ms. Felger appeals disposed of four separate and distinct claimsvia summary judgment. As Ms. Felger is precluded from litigating anyaspect of those claims due to the nature of their dismissal, the judgmentsummarily dismissing these claims is a final order.
 Our analysis, however, does not end here. We must now turn to the trialcourt's determination that there is "no just reason for delay." "[T]hephrase `no reason for delay' is not a mystical incantation whichtransforms a nonfinal order into a final appealable order." Wisintainer,67 Ohio St.3d at 354, 617 N.E.2d 1136. "Such language can, however,through Civ.R. 54(B), transform a final order into a final appealableorder." Id.
 In deciding that there is no just reason for delay:
 "the trial judge makes what is essentially a factual determination — whether an interlocutory appeal is consistent with the interests of sound judicial administration, i.e., whether it leads to judicial economy." Id.
 The Supreme Court indicated that appellate review of thesedeterminations should be deferential, stating:
 "In making its factual determination that the interest of soundjudicial administration is best served by allowing an immediate appeal,the trial court is entitled to the same presumption of correctness thatit is accorded regarding other factual findings. An appellate courtshould not substitute its judgment for that of the trial court where somecompetent and credible evidence supports the trial court's factualfindings. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77."(Parallel citations omitted.) Wisintainer at 355.
 Therefore, a trial court's decision to include the language of Civ.R.54(B) in its order will be upheld if some competent credible evidencesupports the trial court's factual findings. Id. at 355, 617 N.E.2d 1136,following Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,461 N.E.2d 1273. The reasoning behind this highly deferential standardis that:
 "The trial court is most capable of ascertaining whether not granting afinal order might result in the case being tried twice. The trial courthas seen the development of the case, is familiar with much of theevidence, is most familiar with the trial court calendar, and can bestdetermine any likely detrimental effect of piecemeal litigation."Wisintainer at 355, 617 N.E.2d 1136.
 As to whether the trial court's determination of "no just reason fordelay" could serve the interest of judicial economy, Wisintainer againprovides guidance. In Wisintainer, the Supreme Court found that animmediate appeal of an entry of summary judgment in favor of some, butnot all, defendants was the "only possible way to achieve the mostefficient and straightforward trial, one with all the parties presentwith an ability to present evidence against each other." Id. at 356,617 N.E.2d 1136. The Court determined that if appeal of the summaryjudgment order was foreclosed until after trial of the claims against theremaining defendants, there was a possibility that the case would betried twice. Id.
In the present case, there were three claims made by Ms. Felger regarding retaliatory action taken by her employer. However, only two of these claims were dismissed by way of the trial court's grant of partial summary judgment. In its order, the trial court implicitly, but necessarily, determined with respect to her sex discrimination retaliation claim and her workers compensation retaliation claim that Tubetech presented a legitimate non-retaliatory reason for discharging Ms. Felger. This same issue will again be addressed in the context of her disability retaliation claim. Ms. Felger is therefore bound by the trial court's original resolution of that issue.
If the partial summary judgment were reversed on appeal, all of the issues could be included in a trial of the entire dispute. If this court were to uphold the entry of summary judgment, the parties would proceed to trial knowing that they were trying only those issues actually in dispute. Otherwise, if Ms. Felger had to wait until after the trial on the other issues to appeal the entry of summary judgment against her, this court might hold that summary judgment was improvidently granted. The entire trial might have to be conducted again due to the similar elements of the claims dismissed and of those pending. Therefore, we find the trial court could have reasonably determined that "the avoidance of piecemeal trials" was more important in this case than "the avoidance of piecemeal appeals." See Wisintainer.
 Consequently, the trial court did not abuse its discretion in makingits factual determination that there was no just reason for delay.Accordingly, we will proceed to address this case on its merits.
 As her first assignment of error, Ms. Felger alleges:
 "The trial court erred in granting appellees' motion for summary judgment as to appellants' retaliation claim based upon her opposition to and complaints regarding sex discrimination as alleged in count two of the complaint."
 Both parties agree, as a result of the decision of the United States Court of Appeals for the Sixth Circuit, summary judgment should not have been granted as to Count Two, retaliation for sexual discrimination on the grounds of res judicata. As demonstrated by the language dismissing Count Two, the trial court based its decision to grant Tubetech's motion for summary judgment solely on the grounds of res judicata. In light of the Circuit Court's reversal and remand, the federal claims have yet to be litigated. Thus, the doctrine of collateral estoppel no longer applies. As summary judgment on Count Two is improper, Felger's assignment of error is meritorious.
 For her second assignment of error, Ms. Felger asserts the following:
 "The trial court erred in granting appellees' motion for summary judgment as to appellants' retaliation claim based on her filing and prosecution of worker's compensation claims, as alleged in count five of the complaint."
 When reviewing a trial court's granting of summary judgment, we reviewthe evidence de novo, and apply the same standard used by the trialcourt. Varisco v. Varisco (1993), 91 Ohio App.3d 542, 543, citing Parentiv. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829; Bell v.Horton (1996), 113 Ohio App.3d 363, 365. In addition, summary judgmentunder Civ.R. 56 is only proper when the movant demonstrates that:
 "(1) No genuine issue as to any material fact remains to be litigated;
 "(2) the moving party is entitled to judgment as a matter of law; and
 "(3) it appears from the evidence that reasonable minds could come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346.
 These factors make it clear that summary judgment should be grantedwith caution, being careful to resolve doubts in favor of the nonmovingparty. Id.
The party seeking summary judgment has the initial burden of informingthe court of the motion's basis and identifying those portions of therecord showing that there are no genuine issues of material fact on theessential elements of the nonmoving party's claim. Dresher v. Burt(1996), 75 Ohio St.3d 280, 293. The movant must be able to point to someevidence of the type listed in Civ.R. 56(C) that affirmativelydemonstrates that the nonmoving party has no evidence to support itsclaim. Id. If this initial burden is met, the nonmoving party has areciprocal burden to, "* * * set forth specific facts showing that thereis a genuine issue for trial and, if the nonmovant does not respond,summary judgment, if appropriate, shall be granted." Id.
The trial court found in its judgment entry that collateral estoppelbars Count Five of Ms. Felger's complaint, worker' compensationretaliation. The trial court reasoned, "the Plaintiff raised those issuesin the arbitration and therefore asked for them to be decided by thearbitrator." In support of this finding, the trial court refers to theholding in Hapgood v. City of Warren (Oct. 25, 1996), Trumbull App. No.95-T-5355, unreported. See also Hapgood v. City of Warren (C.A.6, 1997),127 F.3d 490.
In Hapgood, an employee was dismissed for falsification of records and gross neglect of duty after filing workers' compensation claims. The discharged employee filed a grievance claiming under the collective bargaining agreement he was discharged without just cause. The matter was submitted to binding arbitration and after hearing testimony and briefs, the arbitrator overruled the grievance and found that the employee had falsified his workers compensation and was discharged with just cause.
After unsuccessfully pursuing his claim with the OCRC and EEOC, the employee filed a complaint in Common Pleas Court alleging 1) retaliatory discharge based on pursuit of workers compensation claims, and; 2) tortious conduct. The trial court in Hapgood granted summary judgment infavor of the employer. The Eleventh District opined:
 "After reviewing the record, we determine that the doctrine ofcollateral estoppel is applicable to appellant's retaliatory dischargeclaim. Appellant has also failed to argue exactly how the issues in theinstant action are different from those in the previous proceedings. Webelieve that the issues and facts concerning the falsified workers'compensation are sufficiently intertwined with the issues and facts whichwould have to be determined under R.C. 4123.90 action to require theapplication of the doctrine." Id. at 10, 11.
The Hapgood court further explained that it was aware of the decisionin Traux v. EM Industries, Inc. (1995), 107 Ohio App.3d 210 where theFirst District held that an arbitrator's finding of just cause for thetermination of an employee does not preclude that employee from bringinga subsequent suit under R.C. 4123.90. Id. at 218. The Hapgood courtdistinguishes its holding from Truax stating,
 "[t]he Truax court relied on the reasoning articulated by the SupremeCourt of the United States in Alexander v. Gardner-Denver Co. (1974),415 U.S. 36 stating that `the Gardner-Denver line of cases indicates thatthe issues decided in the arbitration involving a grievance under acollective bargaining agreement and a statutory claim for retaliatorydischarge are not the same.' 107 Ohio App.3d at 217. However, anadditional cogent factor in the instant case is that the arbitrationproceeding and the retaliatory discharge action involve the same subjectmatter, i.e., the falsified workers' compensation application, and,therefore, both proceedings necessarily involve the same issues." Id. at11, 12.
 The court then determined the issues involved in that particular casewere "essentially the same, i.e., the reason for appellant's discharge,even though appellant has attempted to characterize the issue under adifferent claim and asserting that his discharge was for another reason."The court goes on to explain, "[t]he evidence supports the conclusionthat appellant was fired because of filing a false workers' compensationclaim, not because of the filing of the claim in and of itself." Id. at 11.
The Hapgood court, however, has applied what appears to be faulty logicin its decision. It distinguishes its facts from those of theUnited States Supreme Court line of cases and those of Truax by asserting thatthe issues to be litigated in each forum were essentially the same.However, logic dictates when an employee complains of being wrongfullydischarged, the reason for discharge will be at issue. This will alwaysbe the case. Therefore, the application of the Hapgood ruling should belimited to its facts. If Hapgood were applied in every case, the resultswould be wholly inconsistent with the reasoning of the United StatesSupreme Court.
In Alexander v. Gardner-Denver Co. (1974), 415 U.S. 36 a minorityemployee complained of being discharged based upon his race. His case wasbrought before an arbitrator who found that he was discharged for justcause because he was producing too many defective or unusable parts thathad to be scrapped. The union presented evidence on behalf of theemployee demonstrating how Caucasian employees with similar productionrecords had not been fired. The arbitrator, however, disregarded thosestatistics and limited his review to the discharged employee'sperformance. It appears the arbitrator found the discharge of the minorityemployee to be proper in a vacuum, irrespective of the lower standardsmaintained for Caucasian employees.
In Gardner-Denver, the statutory claim of racial discrimination and thecontractual claim of discharge without just cause involved the sameissue; i.e. the reason for the employee's discharge. Regardless of thatfact, the United States Supreme Court found:
 "In submitting his grievance to arbitration, an employee assertsindependent statutory rights accorded by Congress. The distinctlyseparate nature of these contractual and statutory rights is not vitiatedmerely because both were violated as a result of the same factualoccurrence." Id. at 49, 50.
 The Court added,
 "a contractual right to submit a claim to arbitration is not displacedsimply because Congress also has provided a statutory right againstdiscrimination. Both rights have legally independent origins and areequally available to the aggrieved employee." Id. at 52.
 Finally, the court explained:
 "An arbitrator is confined to interpretation of and application of thecollective bargaining agreement; he does not sit to dispense his ownbrand of industrial justice. * * * If an arbitral decision is based`solely upon the arbitrator's view of the requirements of enactedlegislation,' rather than on an interpretation of the collectivebargaining agreement, the arbitrator has authority to resolve onlyquestions of contractual rights * * *." Id. at 54.
The First District relied upon this very reasoning in Thomas v. Gen.Elec. Co., (1999), 131 Ohio App.3d 825, as the basis for concluding aunion cannot prospectively waive the individual right of a member toselect a judicial forum for the resolution of a member's federal andstate statutory claims. In reference to the Truax and Gardner-Denverdecisions, the First District states,
 "We see strong policy reasons in favor of this holding. Laborarbitrators are authorized under a collective bargaining agreement toresolve contractual claims, not statutory claims. Labor arbitrators havedeveloped a body of expertise in labor law. This is why law presumes thearbitrability of disputes based upon a collective bargaining agreement.(citation omitted) This is not, however, the same body of expertise orthe same body of law implicated by the civil-rights statutes. Nor are theremedies the same." Id. at 82.
 The Ohio Supreme Court addressed a similar issue in Youghiogheny OhioCoal Company v. Oszust (1986), 23 Ohio St.3d 39, holding a privatearbitrator's determination upholding an employee's discharge for "justcause" pursuant to the collective bargaining agreement did not precludethe Ohio Bureau of Employment Services from concluding the employee wasnot "discharged for just cause in connection with his work." Id. atsyllabus. The court reasoned that if it were to accept the argument that"just cause" within the context of the collective bargaining agreementwas identical in meaning to the term "just cause" for purposes ofeligibility for unemployment compensation, then "the arbitrator would forall practical purposes determine not only the validity of the dischargebut also eligibility for unemployment compensation." Id. at 41.
 Likewise, by determining that an arbitrator's decision will be bindingon all other tribunals, we would be placing the power of a judge into thehands of an arbitrator. The United States Supreme Court and the OhioSupreme Court have unequivocally held the duty of an arbitrator islimited to assessing contractual rights under a collective bargainingagreement. Thus, the determination as to whether or not Ms. Felger wasretaliated against for filing a workers' compensation claim would beoutside the scope of the arbitrators duties. Accordingly, Felger's secondassignment of error is meritorious.
 For the foregoing reasons, we reverse the trial court's judgment andremand the matter for further proceedings according to law and consistentwith this court's opinion.
 Donofrio, J., concurs.